ROY L. STEWART, APPELLEE, V. CHARLES E. WALKER ET AL., APPELLANTS.

FILED NOVEMBER 9, 1907. No. 14,964.

1. **Mortgages: REFORMATION: SUBSEQUENT PURCHASER.** Where a mortgage purports to give the amount, date of execution and maturity, and the rate of interest borne by the notes it secures, and is so recorded, the mortgagee may not in a suit against a subsequent purchaser of the premises, who has no notice except such as is afforded by the record, show that the notes intended to be secured matured at an earlier date or bore a higher rate of interest than was specified in the mortgage.

2. ———: **ESTOPPEL.** The statements contained in a mortgage recorded by the mortgagee are his declarations to all subsequent purchasers, and he is estopped, as against one who has bought the premises relying upon such record, to assert that his interest is greater or his lien more onerous than was described in such mortgage.

3. ———: **MISTAKE: EQUITY.** If a mortgagee accepts and records a mortgage which describes the notes it secures as maturing at a later date or bearing a lower rate of interest than is actually

named in such notes, the mistake is his, and under the rule that, where one of two innocent persons must suffer, the one who has made a mistake possible is the one who must bear the loss, the mortgagee must suffer the consequences of such error, rather than the innocent purchaser who has relied upon the record.

4. Vendor and Purchaser: RECORDS: EXAMINATION BY AGENT. It is not necessary for a purchaser of real estate to personally inspect the public records. He may do this by his agent or attorney; and a person who prepares an abstract of title from the record for his examination is the agent of such purchaser.

APPEAL from the district court for Johnson county: JOHN B. RAPER, JUDGE. *Reversed and dismissed.*

*S. P. Davidson* and *C. H. Epperson*, for appellants.

*L. C. Chapman, W. E. Stewart* and *S. S. Stewart, contra.*

CALKINS, C.

On the 5th day of May, 1905, the defendants' grantor executed a mortgage to plaintiff's assignor, which contained the condition that the same should be void upon the payment of the sum of "$2,633.33, with interest thereon at the rate of 6 per cent. per annum according to the tenor and effect of seven promissory notes of even date herewith, one for the sum of $166.66; one for the sum of $166.66; one for the sum of $333.34; one for the sum of $333.34; one for the sum of $333.34; one for the sum of $333.34, and one for the sum of $1,270, due in 1, 2, 3, 4 and 9 years, respectively." This mortgage was duly recorded on the 6th day of May, 1905, and on the 1st day of August, in the same year, the mortgagee executed a written assignment thereof, purporting to transfer the same and the notes therein described to the plaintiff, which assignment was duly recorded on the day of its execution. The notes which the mortgage was really given to secure were dated on the 4th day of April, 1905, and were due, two on the 1st day of March, 1906, one on the 1st day of March, 1907, one on the 1st day of March, 1908, one on the 1st day of March, 1909, and one on March 1, 1913. The

principal of these notes was the same as, described in the mortgage, and they each bore interest at the rate specified in the mortgage, except one of the $166.66 notes, which was drawn to bear interest at the rate of 8 per cent. per annum. The mortgagor on the 7th day of August, 1905, conveyed the premises by a deed without covenants to one Neilson, who on the 23d day of January, 1906, by a similar deed conveyed the premises to the defendant Furer, who took the title with no other notice of the date, amount, date of maturity and rate of interest of the debt secured than that afforded by the record of the mortgage and its assignment. On the 16th day of March, 1906, the plaintiff commenced suit to foreclose the mortgage, alleging that the notes were actually dated April 5, 1905, and became due on the 1st day of March, instead of the 1st day of May, as specified in the mortgage, and that the misdescription thereof in the mortgage resulted from an error of the scrivener who drew the same. He prayed for a reformation of the mortgage and a decree of foreclosure and sale for the amount of the entire debt, which was rendered by the district court, from which judgment the defendant Belle Furer brings this appeal.

1. The principal question in this case is whether, where a mortgage purports to give the amount, date of execution and maturity, and the rate of interest borne by the notes it secures, and is so recorded, the mortgagee may, in a suit against a subsequent purchaser of the premises who has no notice except such as is afforded by the record, show that the notes intended to be secured were dated and matured at an earlier day, and bore a higher rate of interest than was specified in the recorded mortgage, and have the same enforced accordingly. Whatever the rule may be in reference to mortgages which do not purport to give these particulars, we are satisfied that, where the mortgage states the amount, date of maturity, and rate of interest borne by the notes secured thereby, it may not, as against a purchaser without notice, be reformed in any particular which makes the burden of the lien more oner-

ous than it appeared to be from the recorded mortgage. The only rational interpretation of the recording act is that the real mortgage must be recorded, and the very fact that the plaintiff asks to have the mortgage reformed is a confession that the mortgage which he is seeking to enforce was never recorded, and is therefore void as against subsequent purchasers without notice. In the earlier cases a tendency appears to hold the mortgage invalid, unless it truly describes the debt to be secured; but the modern and better doctrine seems to be that, if there is a real debt to be secured, it may be enforced as against a subsequent purchaser, if the amount be no larger than indicated by the mortgage and the conditions no more onerous. We are cited to cases which hold that a debt may be enforced although less in amount than that specified in the mortgage, to cases which hold the mortgage valid where no amount is specified, and to cases where a mortgage is held good which secures a contingent liability; but no case has been brought to our attention which conflicts with the rule above laid down, unless it be the case of *Hinricks v. Brady,* 20 S. Dak. 599, where it was held that a purchaser of the premises was bound by the provisions of the notes that they should draw increased interest after maturity, and that overdue interest payments should also draw increased interest, although this provision was not mentioned in the mortgage. This case appears to have been decided on the authority of *Ricketson v. Richardson,* 19 Cal. 330, where it was held that, when a mortgage mentioned interest without naming the rate, subsequent purchasers were liable for the principal and the conventional interest stipulated in the notes. The opinion expressly concedes the rule that, where a note is described in a mortgage as it is made or recorded as a note for a given sum, the mortgagee cannot set up as against a subsequent purchaser a different and larger debt, for the plain reason that a party dealing with or in respect to the property from an inspection of the mortgage contracts in reference to its terms, and cannot

be supposed to know or suspect that the real fact is different from the recorded account of it. The court there held that there was no intendment under the laws of California that, when interest is the subject of stipulation, no particular rate is agreed on, and, there being no rate specified in the mortgage, that the conventional rate obtained. We are inclined to the view that, where no rate is specified, the legal rate would prevail in this state, but it is not necessary to determine that, for in *Ricketson v. Richardson, supra,* no rate is specified, while in *Hinricks v. Brady, supra,* a rate was specified with no intimation that it was to be changed after due. The latter case, while professedly resting upon the authority of the former, went one step further.

2. The purpose of recording a mortgage is to give notice of the lien to subsequent purchasers and incumbrancers. It was said by MAXWELL, J., in *Edminster v. Higgins,* 6 Neb. 265: "The policy of our law is to discourage secret liens, and to require all instruments affecting the title of real estate to be entered of record"; and that "the law thus places a means within the reach of every one desiring to purchase real estate of ascertaining the condition of its title." The mortgagee receiving a mortgage and recording the same in pursuance of the statute is responsible for the statements therein contained respecting the nature and extent of his lien. The declarations contained in the mortgage are his declarations to all subsequent purchasers, and, under a familiar rule of equity jurisprudence, he is estopped to assert against subsequent purchasers that his interest is greater than he declared it to be by the statements contained in the mortgage which he himself caused to be recorded for the very purpose of notifying such subsequent purchasers of the existence and extent of his lien. It is suggested that the intending purchaser should inquire of the mortgagee concerning the lien. Conceding, for the argument, that this is true in respect to those matters not covered by the mortgage, why should the intending purchaser interrogate the mortgagee con-

cerning those matters which the mortgagee has already formally declared and caused to be entered in the record? If the mortgage declares, as in this instance, that the notes bear even date therewith and are due at specified periods from such date, and that they bear interest at the rate of 6 per cent. per annum, there is no reason why the intending purchaser should be required to go to the mortgagee to ascertain if the facts stated in the mortgage, which he caused to be recorded for the purpose of giving notice, are true.

3. The construction of the recording act contended for by the plaintiff contravenes the well-settled principle of equity jurisprudence that, where one of two innocent persons must suffer from the consequences of a mistake, the person who made the mistake possible is the one who must bear them. It was the fault of the mortgagee if the mortgage which he took did not correctly describe the notes it was intended to secure, and if there is to be a loss in consequence of that mistake he should bear it, and should not be allowed to shift the burden upon the innocent purchaser.

4. The plaintiff contends that the defendant did not rely upon the record, because she did not personally examine the same. It appears that her husband, who acted for her, procured an abstract of the record which correctly exhibited the facts recited in the mortgage as to the debt it secured. It is conclusively presumed against a purchaser that he had notice of the facts stated in the record, and there is no reason suggested why the presumption should not obtain in his favor as well; but if it is necessary for a purchaser to examine the record he may do it by an agent, and that is what happens when he relies upon an abstract made from the record. There is no merit in this contention.

We therefore recommend that the judgment of the district court be reversed and the plaintiff's action dismissed.

AMES, C., concurs.

FAWCETT, C., not sitting.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the plaintiff's action dismissed.

REVERSED.